**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kerry O'Connor, | No. CV-22-00156-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Soul Surgery LLC, *et al.*, | |
| Defendants. | |

At issue is Defendant Soul Surgery LLC's Motion to Dismiss Plaintiff's Complaint (Doc. 21, MTD) to which *pro se* Plaintiff Kerry O'Connor filed a Response (Doc. 24, Resp.), and Defendant filed a Reply (Doc. 28, Reply). The Court has reviewed the parties' briefs and finds this matter appropriate for decision without oral argument. *See* LRCiv 7.2(f). For the reasons set forth below, the Court grants Defendant's Motion to Dismiss with leave for Plaintiff to amend the Complaint. On August 30, 2022, Defendant John Mulligan filed a separate Motion to Dismiss (Doc. 34), essentially making the same arguments as Soul Surgery did. The Court will deny as moot that Motion to Dismiss with leave to refile if Plaintiff files an Amended Complaint.

**I.    BACKGROUND**

Plaintiff is a former employee of Defendant Soul Surgery LLC in Scottsdale, Arizona, of which Defendant John Mulligan is the sole proprietor. (Doc. 1, Compl. ¶ 13.) Plaintiff raises two claims against Defendants: (1) unpaid wages due to Plaintiff and

similarly situated employees[1] in violation the Fair Labor Standards Act (FLSA), 29 U.S.C. § 216(b); and (2) retaliation against and wrongful termination of Plaintiff in violation of Title VII of the Civil Rights Act of 1964 (Title VII). (Compl. ¶¶ 24–26.) As a basis for his claims, Plaintiff alleges the following facts.

Plaintiff was hired on November 30, 2020, to work for Defendants as a Behavioral Health Technician at the hourly rate of $15.50. (Compl. ¶ 13.) Plaintiff and fellow employees were not compensated for the time worked during breaks or lunch periods despite receiving instruction to remain at the facility and work through those break times. (Compl. ¶ 14.)

In January 2021, Plaintiff attended a leadership meeting with other staff, including facility director Stephen Bagnani. (Compl. ¶ 15.) Plaintiff reported to Bagnani that Plaintiff's manager, Rachelle Halloway, encouraged Plaintiff and psychiatric patients to play an interactive game for adults, entitled "What Do You Meme?". (Compl. ¶ 15.) Plaintiff reported to Bagnani that the game was "offensive, insulting, and inappropriate for the work environment" due to the nature of the topics addressed (*e.g.*, religion, ethnicity, age, sexual orientation, and gender). (Compl. ¶ 15.)

On January 28, 2021, Defendants reported issuing Plaintiff a check in the amount of $910.46 for the employment period of January 11 to 24, 2021. (Compl. ¶ 16.) Plaintiff did not receive this check. (Compl. ¶ 16.)

On January 29, 2021, Operations Director Alaina Fountain terminated Plaintiff for performance issues, but Fountain offered to provide Plaintiff positive work references. (Compl. ¶ 17.) Before his termination, Plaintiff was not informed of any performance deficiencies. (Compl. ¶ 17.)

---

[1] Plaintiff brings forth his FLSA claim as an individual and collective action of the following class:

> All employees who were, are, or will be employed by Defendants at its facilities . . . during the period of three years prior to the date of commencement of this action through the date of judgment in this action, who have neither been properly compensated for all of their hours worked nor paid time and one-half for hours in excess of forty (40).

(Compl. ¶ 2.)

On February 15, 2021, Plaintiff filed his Dispute Determination for Wage Claim (Wage Claim) with the Labor Department of the Industrial Commission of Arizona (Labor Department) against Defendants for unpaid gross wages and mileage reimbursement pay. (Compl. ¶¶ 18–19.)

> After its investigation, the Labor Department concluded its report as follows:
>
> The Department does not have sufficient evidence from the investigation in order to render a decision in this matter.
>
> . . . .
>
> **NOTICE TO THE CLAIMANT:** Pursuant to the provisions of A.R.S. § 23-358(B), the Claimant may attempt to recover the amount of wages claimed to be due by instituting a civil action.

(Compl. ¶ 19.) Following the conclusion of his Wage Claim, Plaintiff filed a charge with the Equal Employment Opportunity Commission (EEOC) against Defendants on November 22, 2021. (Compl. ¶ 20.) The EEOC investigation of Plaintiff's charges is pending. (Compl. ¶ 20.)

Plaintiff filed this lawsuit on January 27, 2022. Defendants now move to dismiss Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6).

## II.   LEGAL STANDARD

On a Rule 12(b)(6) motion, Rule 8(a) governs and requires that a plaintiff allege "enough facts to state a claim to relief that is plausible on its face" to avoid dismissal of a claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

When analyzing a complaint for failure to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6), the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Legal conclusions couched as factual allegations are not entitled to the assumption of truth and are therefore insufficient to defeat a Rule 12(b)(6)

motion. *Iqbal*, 556 U.S. at 681. A dismissal under Rule 12(b)(6) for failure to state a claim can be based on either (1) the lack of a cognizable legal theory or (2) insufficient facts to support a cognizable legal claim. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). "While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." *Twombly*, 550 U.S. at 555 (citations omitted). Further, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that 'recovery is very remote and unlikely.'" *Id*. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

## III.   ANALYSIS

### A.   The Sufficiency of Plaintiff's Claims

#### 1.   Plaintiff's FLSA Claim

Plaintiff alleges that Defendants violated the FLSA when they failed to compensate Plaintiff and other similarly situated employees their overtime wages. (Compl. ¶ 14.) Specifically, Plaintiff and others "were not compensated for working through meal and break periods [which] constitutes the failure to pay overtime wages." (Compl. ¶ 25.) Defendants argue that Plaintiff's overtime claim fails to meet the Rule 8(a) pleading standard because Plaintiff simply alleges that he was instructed to work through meal and break periods. (MTD at 2–3.) The Complaint does not offer any other information in connection to this specific claim. According to Defendants, Plaintiff's complaint lacks critical information and renders the FLSA allegation nothing more than mere speculation. (MTD at 2.) The Court agrees.

Congress enacted the FLSA "to protect all covered workers from substandard wages and oppressive working hours." *Barrentine v. Arkansas-Best Freight Sys. Inc.*, 450 U.S. 728, 739 (1981). Among the FLSA's central provisions is its requirement that employers pay non-exempt workers at one and a half times the regular rate for any time worked in excess of forty hours in a single week. 29 U.S.C. § 207; *see Tyson Foods, Inc. v.*

*Bouaphakeo*, 136 S. Ct. 1036, 1042 (2016). Therefore, any liability assessment will require a determination as to the total number of hours worked.

While Plaintiff alleges that he was instructed to work through designated break periods, Plaintiff does not provide how many *total hours* he worked in a work week. In other words, Plaintiff does not allege that he was instructed to work through break periods or lunch *in addition to* a full forty-hour work week. While the Court does not require detailed factual allegations, it does require that the facts, taken together, provide the grounds for Plaintiff's claims. The Court cannot reliably infer from the allegations that working through designated break periods equates to working an excess of forty hours in a work week. Therefore, the Court finds that Plaintiff failed to allege sufficient facts to raise a plausible inference that Plaintiff (1) worked in excess of forty hours during a work week and (2) was not properly compensated for the same.

If a defective claim can be cured, a claimant is entitled to amend the claim before it is dismissed. *See Lopez v. Smith*, 203 F.3d 1122, 1127–30 (9th Cir. 2000). Because it is possible that Plaintiff could allege non-conclusory facts from which the Court could plausibly infer that he worked in excess of forty hours and was not properly compensated in violation of the FLSA, the Court grants Plaintiff leave to amend his Complaint. *See id.*

### 2. Plaintiff's Title VII Claim

In addition to his FLSA claim, Plaintiff also alleges "wrongful and retaliatory termination, and Title VII violations." (Compl. ¶ 1.) As Defendants point out, Plaintiff "filed a charge of discrimination, harassment, and retaliation with the [EEOC]" before filing this suit (Compl. ¶ 20.) In arguing for dismissal of the remaining allegations in the Complaint, Defendants focus on Plaintiff's harassment and discrimination allegations, and argue they are insufficient to state a claim under the respective legal standards. (MTD at 3–4.) The Court might agree if Plaintiff's Title VII claim was based on allegations of discrimination and harassment, but it is not.

Rather, as the basis for his Title VII claim, Plaintiff alleges that he suffered *retaliatory termination of employment* after reporting to upper management that Plaintiff's

supervisor encouraged him to play an inappropriate and offensive game with patients. (Compl. ¶¶ 15, 26.) Plaintiff clearly states the basis for his Title VII claim in Section V of the Complaint, writing that he "was retaliated against, and wrongfully terminated, for exposing work violations of Title VII and state law." (Compl. ¶ 26.) Plaintiff points out in his Response that he "was terminated shortly after making complaints and the inference of retaliation is clear." (Resp. at 2.) Despite the Title VII claim being rooted in an alleged act of retaliation, Defendant Soul Surgery continues to argue in its Reply that Plaintiff failed to allege facts sufficient to state a claim for discrimination and harassment, thereby missing the mark entirely. (Reply at 3.)

Retaliation begs a different legal analysis under the framework of Title VII—one that Defendants simply did not address. *Compare* 42 U.S.C. § 2000e-3 *with* 42 U.S.C § 2000e-2. The Court will not dismiss Plaintiff's retaliation claim due to his insufficient pleading of discrimination and harassment because retaliation is a legally distinct claim and is unchallenged by Defendants.

### B. Title VII Administrative Remedies

To seek relief under Title VII, a plaintiff must first exhaust any administrative remedy available under 42 U.S.C. § 2000e-5 by filing a charge with the EEOC. *Surrell v. Ca. Water Serv. Co.*, 518 F.3d 1097, 1104 (9th Cir. 2008). The EEOC must issue a right-to-sue letter before a plaintiff can file a Title VII suit. *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988); 42 U.S.C. § 2000e-5(f)(1). Additionally, "the EEOC is required to issue a right-to-sue letter 180 days after it assumes jurisdiction over a timely charge." *Salfingere v. Latex*, 971 F. Supp. 1308, 1309 (D. Ariz. 1997) (citing 42 U.S.C. § 2000e-5(f)(1)). When the plaintiff has not yet received a right-to-sue letter from the EEOC, his Title VII claim is subject to dismissal. *Karim-Panahi*, 839 F.2d at 626. The district court is required to grant the plaintiff leave to amend the pleading when the dismissal is based on the failure to allege receipt of a right-to-sue letter. *Id.*; *see generally Lopez*, 203 F.3d at 1130.

Plaintiff argues, and the Court agrees, that Title VII's civil action filing requirements are not jurisdictional prerequisites for this Court. The Supreme Court has held that "Title VII's charge-filing requirement is a processing rule, albeit a mandatory one, not a jurisdictional prescription delineating the adjudicatory authority of courts." *Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843, 1851 (2019).

While not jurisdictional, mandatory claim-processing and filing rules can still be determinative of a plaintiff's ability to bring a suit. *Davis*, 139 S. Ct. at 1849 ("A claim-processing rule may be 'mandatory' in the sense that a court must enforce the rule if a party 'properly raise[s]' it.") (citation omitted). The Ninth Circuit honors EEOC mandatory filing rules, including the receipt of a right-to-sue letter before the filing suit absent "any equitable consideration to the contrary."[2] *Karim-Panahi*, 839 F.2d at 626. Therefore, despite it not being jurisdictional, "[t]he general requirement of a federal right-to-sue letter remains." *Surrell*, 518 F.3d at 1105. As such, this Court requires that Plaintiff allege receipt of a statutory right-to-sue letter pursuant to 42 U.S.C. § 2000e-5(f)(1) before pursing his related Title VII claim.

Defendants argue that even if Plaintiff sufficiently pled his Title VII claim, the claim must be dismissed for failure to obtain the requisite right-to-sue letter. (MTD at 4–5.) In response, Plaintiff argues that he *did* receive a right-to-sue letter. (Resp. at 4.) Plaintiff refers to the Labor Department's determination regarding his Wage Claim, which permits Plaintiff "to recover the amount of wages claimed to be due by instituting a civil action." (Resp. at 7–8.) Plaintiff argues that the FLSA's broad coverage and legislative purpose extend to and encompass Title VII, so the right-to-sue letter in relation to his Wage Claim should satisfy the requirement for the same for his Title VII claim. (Resp. at 4.) The Court disagrees.

While there are circumstances that allow another agency's right-to-sue letter to satisfy the EEOC's administrative requirements, there must exist a "worksharing

---

[2] For example, courts consider waiver, estoppel and equitable tolling when determining whether the imposition of the right-to-sue letter requirement is inequitable. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982).

agreement" between the agencies. *Surrell,* 518 F.3d at 1104–5 (holding that a State Department's right-to-sue letter satisfied the EEOC letter requirement because the agencies held a worksharing agreement in relation to the plaintiff's claims). Plaintiff does not allege that there exists a worksharing agreement between the Labor Department and the EEOC related to his claims. Moreover, while Plaintiff argues that the FLSA and Title VII parallel each other in legislative purpose, the two Acts stand apart from each other for a very important reason: Each provide for a separate avenue of relief and protection for aggrieved employees who experience different forms of misconduct in the workplace. *Compare* 42 U.S.C. § 2000e–e-17 (prohibiting employment discrimination based on race, color, religion, sex, and national origin) *with* 29 U.S.C. §§ 201–219 (prohibiting violation of wage, overtime, and recordkeeping standards). Therefore, Plaintiff cannot rely on his right-to-sue letter received from the Labor Department to satisfy separate EEOC requirements for his Title VII claim.

Ultimately, Plaintiff fails to allege that he received a right-to-sue letter from the EEOC. As Defendants point out in their Motions, Plaintiff only pleads that his charge is pending before the EEOC. (MTD at 4; Compl. ¶ 20.) Since Plaintiff failed to exhaust all administrative remedies required by 42 U.S.C § 2000e-5 before bringing this suit, his Title VII claim is dismissed with leave to amend if Plaintiff receives a right-to-sue letter from the EEOC.

### C.     Plaintiff's Collective Action

The FLSA provides a mechanism – the "collective action" – through which workers can sue jointly for violations of its overtime compensation and other provisions. *See* 29 U.S.C. § 216(b). The collective action thus allows a representative plaintiff to bring suit on behalf of a group of workers who are "similarly situated," *see id.*, and thereby serves to (1) reduce the burden on plaintiffs through the pooling of resources, and (2) make efficient use of judicial resources by resolving common issues of law and fact together. *See Hoffman-La Rouche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989). Plaintiff brings his FLSA action on behalf of himself and other employees of Defendants as a *pro se* Plaintiff.

Defendants argue—correctly—that Plaintiff cannot bring a collective action claim under the FLSA in a *pro se* capacity.

The Ninth Circuit "adhere[s] to the general rule prohibiting *pro se* plaintiffs from pursuing claims on behalf of others in a representative capacity." *Simon v. Hartford Life, Inc.*, 546 F.3d 661, 664 (9th Cir. 2008) (prohibiting a *pro se* plaintiff to act as a representative for claims brought under an ERISA claim); *Morgovsky v. AdBrite, Inc.*, 2012 WL 1595105, *4 (N.D. Cal. May 4, 2012) (prohibiting the same under an FLSA claim). Plaintiff seems to agree, asking in his Response for the Court "to allow him to file for Collective Action Certification should counsel appear on his behalf." (Resp. at 5.) Therefore, the Court will dismiss Plaintiff's request to pursue a collective action with respect to his FLSA claim without prejudice.

**IT IS THEREFORE ORDERED** granting Defendant Soul Surgery LLC's Motion to Dismiss (Doc. 21). All counts are dismissed without prejudice.

**IT IS FURTHER ORDERED** denying as moot Defendant John Mulligan's Motion to Dismiss (Doc. 34).

**IT IS FURTHER ORDERED** granting Plaintiff leave to amend the Complaint if Plaintiff can cure the defects detailed in this Order. Plaintiff shall file any Amended Complaint by September 30, 2022.

**IT IS FURTHER ORDERED** that if Plaintiff does not file an Amended Complaint by September 30, 2022, the Clerk shall dismiss this action without further Order of this Court.

Dated this 2nd day of September, 2022.

Honorable John J. Tuchi
United States District Judge