**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kerry O'Connor, | No. CV-22-00156-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Soul Surgery LLC, *et al.*, | |
| Defendants. | |

At issue is Defendants Soul Surgery LLC and John Mulligan's Motion for Summary Judgment (Doc. 68, MSJ) supported by a Statement of Facts (Doc. 69, DSOF). Plaintiff Kerry O'Connor, who appears *pro se* in this matter, filed a Response (Doc. 73, Resp.) supported by a Statement of Facts (Docs. 74–75, PSOF), and Defendants filed a Reply (Doc. 76, Reply). The Court will resolve the Motion without oral argument. LRCiv 7.2(f).

**I.    BACKGROUND**

On November 30, 2020, Plaintiff began working as a Behavioral Health Technician ("BHT") for Defendant Soul Surgery, a residential rehabilitation center in Scottsdale, Arizona for patients with addiction and mental health issues. Defendant John Mulligan is Soul Surgery's sole owner and Chief Executive Officer.

Plaintiff avers that Soul Surgery sanctioned its staff and clients' playing of two games, "Cards Against Humanity" and "What Do You Meme," which constituted discriminatory and harassing conduct based on sex, religion, race, disability, and age. (Doc. 75, O'Connor Decl. ¶ 4.) He states that, "[d]uring a January 2021 BHT meeting," he

reported that staff and clients played these games and that they were "personally offensive" to him. (O'Connor Decl. ¶¶ 5–6.) Within days, his "hours were reduced," and on January 29, 2021, Soul Surgery terminated his employment. (O'Connor Decl. ¶¶ 8, 10.)

Plaintiff also avers that "Soul Surgery supplied meals daily in residential homes" and "[s]taff and patients were encouraged to eat meals together." (O'Connor Decl. ¶ 3.) Nevertheless, Plaintiff claims he was not paid for what he alleges was work over his daily half-hour lunch break. (Doc. 54. Second Am. Compl. (SAC) ¶ 45.) Moreover, Plaintiff states Soul Surgery did not give him his final paycheck after termination until over a year passed, and he refused to cash it because it was "deficient." (O'Connor Decl. ¶¶ 15–18.)

On February 15, 2021, Plaintiff filed a Dispute Determination for Wage Claim against Defendants with the Labor Department of the Industrial Commission of Arizona for unpaid gross wages of $1,034.63 and unpaid mileage of $27.00, and the Labor Department issued a right to sue letter on August 30, 2021. (SAC ¶¶ 30–31.) On November 23, 2021, Plaintiff filed a Charge of Discrimination against Defendants with the Equal Employment Opportunity Commission (EEOC), and the EEOC issued a right to sue letter on February 3, 2023. (SAC ¶¶ 33–38.)

In this lawsuit, Plaintiff brings claims against Soul Surgery under both Title VII of the Civil Rights Act of 1964 and the Arizona Civil Rights Act, A.R.S. § 41-1463 ("ACRA"), for a hostile work environment, retaliation, and wrongful termination based on sex, religion, race, disability, and age.[1] He also brings claims against Soul Surgery and Mulligan under the Fair Labor Standards Act, 29 U.S.C. § 216(b) ("FLSA"), for failure to pay minimum wage and overtime and for retaliation. Defendants now move for summary judgment on all of Plaintiff's claims against them.

## II.     LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and the

---

[1] Plaintiff's claims for discrimination based on a disability—here, substance use disorder—and age are not contemplated by Title VII, but they are contemplated by the ACRA.

- 2 -

movant is entitled to prevail as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "A fact is 'material' only if it might affect the outcome of the case, and a dispute is 'genuine' only if a reasonable trier of fact could resolve the issue in the non-movant's favor." *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 232. When the moving party does not bear the ultimate burden of proof, it "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party carries this initial burden of production, the nonmoving party must produce evidence to support its claim or defense. *Id.* at 1103. Summary judgment is appropriate against a party that "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

In considering a motion for summary judgment, the court must regard as true the non-moving party's evidence, as long as it is supported by affidavits or other evidentiary material. *Anderson*, 477 U.S. at 255. However, the non-moving party may not merely rest on its pleadings; it must produce some significant probative evidence tending to contradict the moving party's allegations, thereby creating a material question of fact. *Id.* at 256–57 (holding that the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment); *see also Taylor v. List*, 880 F.2d 1040, 1045

1  (9th Cir. 1989) ("A summary judgment motion cannot be defeated by relying solely on
2  conclusory allegations unsupported by factual data." (citation omitted)).

3  **III.   ANALYSIS**

4      **A.    Title VII and ACRA Claims**

5          **1.    Hostile Work Environment**

6  In the SAC, Plaintiff pleads Title VII and ACRA claims of "Hostile Work
7  Environment," "Retaliation," and "Wrongful Termination." (SAC at 9.) With regard to
8  Plaintiff's claim that playing the game Cards Against Humanity created a hostile work
9  environment, Defendants contend that Plaintiff has produced insufficient evidence to
10 create a genuine issue of fact. (MSJ at 13–15.)

11 To state a Title VII claim of harassment based on a hostile work environment, a
12 plaintiff must produce evidence sufficient to show that: 1) he was subjected to verbal or
13 physical conduct based on his protected class; 2) this conduct was unwelcome; and 3) the
14 conduct was sufficiently severe or pervasive as to alter the conditions of his employment
15 and create an abusive working environment. *Fuller v. City of Oakland*, 47 F.3d 1522, 1527
16 (9th Cir. 1995). As for an ACRA claim, "because the Arizona statutory scheme is modeled
17 after and generally identical to Title VII . . . , federal court construction of Title VII is
18 persuasive in construing Arizona's civil rights law." *Dawson v. Superior Ct.*, 786 P.2d
19 1074, 1076 (Ariz. Ct. App. 1990).

20 The Court agrees with Defendants that Plaintiff has failed to proffer sufficient
21 evidence for several aspects of his Title VII and ACRA claims. As for whether he was
22 subjected to verbal or physical conduct based on his sex, religion, race, disability, and age,
23 as he alleges, he testified in his deposition that he was required to play Cards Against
24 Humanity one time—on his first day of work—with patients in group therapy, and it made
25 him uncomfortable. (DSOF Ex. B, O'Connor Dep. 48, 52, 55.) He testified that First Step,
26 one of the rehab residences where he worked, had "a whole cupboard full of games"—"40
27 or 50 to choose from"—which could be played as part of an evening routine in which staff
28 members and patients engaged in a group activity together to "promote unity." (O'Connor

Dep. at 51–54.) On the evening in question, facility manager Rachelle Holloway chose Cards Against Humanity for staff and patients to play together. (O'Connor Dep. at 54.) At his deposition, Plaintiff did not recall the content of any specific card involved in the game but testified that the cards were offensive and "ridiculed, harassed, made fun of, demonized, glamorized . . . some of the sickest and most depraved things that happen or that people are or that people do in our community." (O'Connor Dep. at 50.) He stated, "it's just an awful game, racial overtones, sexual overtones, sexual behavior, sexual behavior between priests and—I mean, it's awful." (O'Connor Dep. at 49.) Although Plaintiff concludes that all classes protected by Title VII were implicated by the content of the game, Plaintiff provides no evidence how the game targeted *his* sex, religion, race, disability, or age; he instead describes equal opportunity offensive content.

Critically, Plaintiff provides no admissible, non-conclusory evidence of the actual content of the game from which a factfinder could assess whether the content indeed subjected him to verbal conduct based on a protected class. In his Declaration, he refers to Attachment 1, which consists of photographs of what appear to be cards from the game (O'Connor Decl. Attach. 1), but (1) he lays no foundation for the photos, including whether these cards are from the actual Cards Against Humanity game he played or an identical version of it; and (2) he does not state whether these cards were the ones used or the ones that offended him while he played the game or whether these are simply some possible or hypothetical cards used in the game. Without more, the Court cannot assess the relevance, authenticity, or reliability of Plaintiff's photos of cards; Plaintiff cannot assume the Court's or a factfinder's familiarity with the content of the version of Cards Against Humanity he played.

Counsel for Defendants also represent that Plaintiff never produced to them the photos of the cards he attached to his Declaration such that Defendants could meet and challenge that evidence during the discovery period. (Reply at 5.) Thus, in addition to the inadmissibility of Plaintiff's photos of cards for the reasons stated *supra*, the Court could also strike Plaintiff's Attachment 1 under Rule 37(c)(1). That Rule states that if a party

fails to disclose information to the opposing party as required by Rule 26(e), the party is not permitted to use the information as evidence on a motion "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Plaintiff has not shown that he disclosed the information to Defendants or that his failure to disclose was substantially justified or is harmless.

Even if Plaintiff had produced admissible, non-conclusory information regarding the content of Cards Against Humanity in response to Defendants' Motion, as he was required to do under Rule 56, Plaintiff's evidence would be insufficient for a reasonable jury to find that the third element of the *prima facie* hostile work environment claim is met, namely, that the conduct was sufficiently severe or pervasive as to alter the conditions of his employment and create an abusive working environment. In assessing the third element, the conduct must be severe and pervasive enough to both subjectively and objectively create an abusive environment. *Fuller*, 47 F.3d at 1527. While there is no exact test to determine whether the environment is objectively abusive, factors to consider include the frequency and severity of the conduct. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22–23 (1993). Although "an isolated incident of harassment by a co-worker will rarely . . . give rise to a reasonable fear" that the harassment is a permanent condition of employment, an employer may be liable if the plaintiff shows that he feared he "would be subject to such misconduct in the future because . . . [defendant] tolerated" the harasser's conduct. *Brooks v. City of San Mateo*, 229 F.3d 917, 923–24 (9th Cir. 2000).

In his deposition, Plaintiff testified that Holloway, a manager, was present when he played Cards Against Humanity with patients on his first day of work, and the game lasted about an hour and a half. (O'Connor Dep. at 48, 51.) Plaintiff also testified that as soon as he told facilities director Stephen Bagnani at a staff meeting a month later that the game had been played with clients, Bagnani replied that they were to remove the game from the facility immediately. (O'Connor Dep. at 48.) Even presuming Plaintiff could show that the single time he played the game subjected him to verbal conduct based on a protected class, Plaintiff provides no evidence that any employee of Soul Surgery, whether Holloway or

someone else, ever subjected him to other verbal or physical conduct based on a protected class during his employment after the game was played on his first day. To the extent Plaintiff states he played another game one time, What Do You Meme, Plaintiff does not remember anything about it or provide evidence going to the content of the game or when he played it. (O'Connor Dep. at 54.) And to the extent Plaintiff states that Soul Surgery staff and patients must have had sexual relations with each other because Holloway told staff in an e-mail that "[i]nappropriate behavior is to be stopped IMMEDIATELY" because there should be "ZERO fraternizing or sexual activities at any time going on between clients, and or staff and clients" (O'Connor Decl. ¶ 9 & Attach. 3), Plaintiff does not allege that *he* was subjected to any sexually harassing conduct during his employment with Soul Surgery. Thus, even if Plaintiff could show that the game Cards Against Humanity constituted an incident of harassment, there is no evidence that it was anything other than an isolated incident and no evidence of conduct so severe or pervasive that it altered the conditions of his employment and created an abusive working environment. For these reasons, Plaintiff has failed to produce evidence from which a reasonable jury could find that he was subject to a hostile work environment under Title VII or ACRA, and Defendants are entitled to summary judgment on this claim.

### 2. Retaliation and Wrongful Termination

Plaintiff also raises a claim of Title VII retaliation, alleging he was wrongfully terminated after he reported that he was offended by having to play the games Cards Against Humanity and What Do You Meme with patients. (SAC ¶ 52.) A plaintiff establishes a *prima facie* case of retaliation by showing that (1) he engaged in a protected activity; (2) his employer subjected him to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action. *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000). An employee engages in protected activity when he opposes conduct that he reasonably believes to be an unlawful employment practice under Title VII, or when he participates in an EEOC investigation or proceeding related to the same. 42 U.S.C. § 2000e-3(a); *see Trent v. Valley Elec. Ass'n Inc.*, 41 F.3d 524, 526 (9th

Cir. 1994). The engagement in protected activity must be the but-for cause of the adverse employment action. *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013).

The Court agrees with Defendants that Plaintiff has failed to produce sufficient evidence to demonstrate that he engaged in a protected activity by opposing conduct that he reasonably believed to be *an unlawful employment practice under Title VII*. (MSJ at 15-16.) At his deposition, Plaintiff testified that, during a weekly BHT meeting, facilities director Bagnani "brought up how a co-worker, another BHT, was discharged, or fired, for having inappropriate sexual conversations with their partner on speakerphone, and that a patient reported that they were triggered because of this conversation and that this BHT was fired or terminated because of that. And they discussed that, and at the time I brought up that the playing—having employees or staff members and patients play that game Cards Against Humanity was absolutely inappropriate and I found it offensive. . . . And then Mr. Bagnani replied, then we need to get that game out of the facility." (O'Connor Dep. at 48.) Plaintiff now maintains that this incident constituted a protected activity under Title VII.

By his own testimony, Plaintiff only commented to Bagnani that Cards Against Humanity was inappropriate and offensive in the context of the treatment of the rehab facility's addiction patients, and specifically, avoiding triggering patients by way of sexually charged conversations. The evidence thus shows that the gravamen of Plaintiff's report was whether playing Cards Against Humanity was appropriate treatment for patients suffering from addiction, which is not protected by Title VII. Plaintiff has produced no non-conclusory evidence that he reported and opposed discrimination such that his managers at Soul Surgery were aware he was complaining about a possible Title VII violation, which would have been a protected activity. *See Maner v. Dignity Health*, 350 F. Supp. 3d 899, 907 (D. Ariz. 2018) (finding that the plaintiff's report was not a protected activity because he did not even mention discrimination and it was written in the context of plaintiff's performance and funding for plaintiff's position, not discrimination or unfair treatment); *Ekweani v. Ameriprise Fin., Inc.*, No. CV-08-01101-PHX-FJM, 2010 WL

481647, at *6 (D. Ariz. Feb. 8, 2010), *aff'd*, 444 F. App'x 968 (9th Cir. 2011) (finding the plaintiff's report did not adequately put the defendant on notice of discrimination, stating "[a]n employee need not utter magic words to put his employer on notice that he is complaining about unlawful discrimination" but "an employer must be reasonably aware that its employee is engaging in protected activity"). Indeed, Bagnani avers that Plaintiff "never complained to me about discrimination or harassment in the workplace." (DSOF Ex. C, Bagnani Decl. ¶ 16.) Because Plaintiff's evidence is insufficient for a reasonable jury to conclude he engaged in a protected activity under Title VII, Plaintiff cannot demonstrate a *prima facie* retaliation claim and Defendants are entitled to summary judgment on this claim.

**B.    FLSA Claims**

**1.    Minimum Wage and Overtime**

Under the FLSA, Plaintiff claims he was not paid for all hours worked or, alternatively, for overtime hours because, although he was not completely relieved from duty over lunch, he was not paid for his 30-minute lunch breaks. (SAC ¶¶ 45–47 (citing 29 U.S.C. §§ 206–207, 29 C.F.R. § 785.19(a).) The FLSA has two major wage provisions. It requires employers to pay (1) an hourly minimum wage that is set by statute and calculated according to the number of hours worked in a week, and (2) overtime wages at a rate of 1.5 times an employee's hourly wage for every hour worked over 40 hours in a week. *See* 29 U.S.C. § 206(a)(1) (minimum wage); 29 U.S.C. § 207(a)(1) (overtime); *see also Probert v. Fam. Centered Servs. of Alaska, Inc.*, 651 F.3d 1007, 1009–10 (9th Cir. 2011).

To prevail on overtime or unpaid minimum wage claims, a plaintiff must prove (1) the uncompensated activity constituted work; (2) the time worked was not *de minimis* and was "reasonable in relation to the principal activity"; (3) "the employer had knowledge, either actual or constructive, of the plaintiff's overtime work"; and (4) the amount of time worked. *Dixon v. City of Forks*, 2009 WL 1459447, at *3–6 (W.D. Wash. May 26, 2009) (internal citations omitted). An activity constitutes work where it was "(1) undertaken for

the benefit of the employer, (2) known or reasonably should have been known by the employer to have been performed, and (3) controlled or required by the employer." *Id.* at *3 (citing *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F. 2d 413, 414 (9th Cir. 1981)).

Plaintiff contends he was generally required to work over lunch, such that his lunch periods were not bona fide meal periods. Among the regulations implementing the FLSA, section 785.19 provides,

> Bona fide meal periods are not worktime. . . . These are rest periods. The employee must be completely relieved from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. . . . The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating. . . . It is not necessary that an employee be permitted to leave the premises if he is otherwise completely freed from duties during the meal period.

29 C.F.R. § 785.19.

Plaintiff has raised genuine issues of fact as to whether he worked during his lunch breaks and whether Defendants knew or reasonably should have known he was working over lunch. Defendants contend, and Plaintiff does not dispute, that the evidence shows Plaintiff received the Employee Handbook, which required that employees report 30-minute lunch breaks and all overtime hours. (MSJ at 3.) Because Plaintiff complied with the rule that he report at least a 30-minute lunch break on his daily time sheets, Defendants argue that Plaintiff is not now entitled to payment for work he did not report in contravention of the Employee Handbook. (MSJ at 9–10.) Relatedly, Defendants argue they could not have known that Plaintiff was working over lunch when he did not report it. (MSJ at 9–10.)

But "an employee does not waive his claim for overtime compensation by failing to request overtime compensation at the time the work is performed." *Dixon*, 2009 WL 1459447, at *4 (internal citations omitted). The question is rather whether Plaintiff has produced evidence that his activity during lunch was undertaken for Soul Surgery's benefit,

such that it constituted work, and whether the evidence may demonstrate Soul Surgery knew or reasonably should have known Plaintiff was working at that time.

Although evidence shows BHTs were not supposed to leave the Soul Surgery facilities at lunch, that evidence is not dispositive because, as noted *supra*, the FLSA regulations state an employer need not permit employees to leave the premises during a bona fide meal period. But Plaintiff avers, "Staff and patients were encouraged to eat meals together to promote harmony and unity," so over his lunch break he "interacted and ate with the clients in the same setting almost every day." (O'Connor Decl. ¶ 3.) When pressed in his deposition as to whether what he was doing was simply talking with patients over lunch, Plaintiff replied, "That's what we do there." (O'Connor Dep. at 117.) Indeed, when asked why he couldn't just tell patients that he was on his lunch break, he explained,

> Do you know how patients would feel if you did that, if we're sitting in the same area and you say, I can't talk to you, I'm taking lunch? They already come in with enough issues that people have never listened to them and people don't care and nobody gives a shit what I think. No, I would never do that to a patient. If I'm there in the facility and we're eating, no.

(O'Connor Dep. at 117.)

The bona fide meal regulation states that "an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating." 29 C.F.R. § 785.19. Considering that Plaintiff was generally not permitted to leave the premises for his lunch break, the premises had no separate staff break room, and Plaintiff testified that Soul Surgery encouraged staff to eat meals and talk with patients—something he testified was unavoidable in any event—Plaintiff has produced sufficient evidence to raise at least a genuine issue as to whether his activity over lunch breaks was undertaken for Soul Surgery's benefit in caring for patients, such that it was work, and whether Soul Surgery knew or reasonably should have known Plaintiff was working over lunch breaks. Soul Surgery is thus not entitled to summary judgment on Plaintiff's FLSA minimum wage/overtime claims. Plaintiff will have the burden to demonstrate how many hours constituted uncompensated work time during the nine-week period he worked for

Soul Surgery, calculated either as minimum wage per work week or as overtime, as appropriate under the FLSA.

Plaintiff also claims he never received his final paycheck, and the parties do not dispute that Plaintiff is entitled to that pay. The evidence shows Defendants had the final paycheck cut, twice, but Plaintiff never picked it up in the first instance or cashed it in the second. Plaintiff also will have the burden to demonstrate the amount of his final paycheck he is entitled to. The Court agrees with Defendants (MSJ at 10) that, although Plaintiff's SAC mentions Arizona's unpaid wages statute, A.R.S. § 23-355, he does not raise a separate claim under that statute against Defendants in the SAC, as would be required for the Court to apply the treble damages provision of that statute. Likewise, although Plaintiff seeks "punitive damages" in the SAC, they are not available under the FLSA for an employer's failure to pay minimum wage or overtime.

### 2.     Liquidated Damages

Under the FLSA, an employer who violates the overtime provisions "shall be liable" to the employees affected in the amount of their overtime compensation and "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Liquidated damages, or double damages, are therefore mandatory unless the employer shows it acted in subjective good faith and had objectively reasonable grounds for believing its conduct did not violate the FLSA. *Chao v. A–One Med. Servs., Inc.*, 346 F.3d 908, 920 (9th Cir. 2003). That is, the employer has the burden to "establish that it had an honest intention to ascertain and follow the dictates of the Act and that it had reasonable grounds for believing that its conduct complied with the Act." *Flores v. City of San Gabriel*, 824 F.3d 890, 905 (9th Cir. 2016) (internal quotations and brackets omitted). The Ninth Circuit describes this as a "heavy burden." *Id*. In short, "[d]ouble damages are the norm; single damages are the exception." *Haro v. City of Los Angeles*, 745 F.3d 1249, 1259 (9th Cir. 2014) (citing *Chao*, 346 F.3d at 920).

1    Defendants do not move for summary judgment on the question of good faith
2 associated with any liquidated damages determination the Court must make, so that issue
3 will proceed to trial unless the parties reach agreement on the issue.

4         **3.     Retaliation**

5    In the SAC, Plaintiff also claims Defendants retaliated against him under the FLSA
6 by "1) reducing his work schedule, 2) terminating him without notice or cause, and 3) . . .
7 withholding earned pay." (SAC ¶ 48.) The FLSA makes it unlawful for an employer "to
8 discharge or in any other manner discriminate against any employee because such
9 employee has filed any complaint or instituted or caused to be instituted any proceeding"
10 under the FLSA. 29 U.S.C. § 215(a)(3). To establish a *prima facie* case of retaliation, a
11 plaintiff must show (1) he engaged in activity protected by the FLSA; (2) the defendant
12 took an adverse employment action; and (3) there was a causal link between the protected
13 activity and the adverse action. *Peak v. Forever Living Prod. Int'l Inc.*, No. CV-11-00903-
14 PHX-SRB, 2013 WL 12198834, at *9 (D. Ariz. Aug. 26, 2013). "The causal link can be
15 inferred from circumstantial evidence such as the employer's knowledge of the protected
16 activities and the proximity in time between the protected activity and the adverse action."
17 *Dawson v. Entek Int'l*, 630 F.3d 928, 936 (9th Cir. 2011).

18    Here, the only activity *protected by the FLSA* for which Plaintiff has proffered
19 evidence is his filing of a Dispute Determination for Wage Claim with the Labor
20 Department on February 15, 2021. But the adverse employment actions Plaintiff claims
21 Defendants took of reducing his work schedule and terminating him occurred before
22 Plaintiff filed the Wage Claim against Defendants, so there is no causal link between the
23 filing of the Wage Claim and those adverse actions. Likewise, Plaintiff avers Defendants
24 refused to provide his final paycheck on February 12, 2021, before he filed the Wage
25 Claim; indeed, Plaintiff claims that Defendants' refusal to give him his final paycheck was
26 the impetus for filing the Wage Claim. (SAC ¶ 30; O'Connor Decl. ¶ 15.) Plaintiff's
27 evidence thus does not demonstrate that Defendants took adverse employment actions
28 because he engaged in the protected activity of filing a Wage Claim with the Labor

- 13 -

Department, and Defendants are entitled to summary judgment on Plaintiff's FLSA retaliation claim.

### 4.      Mulligan Liability

Finally, Defendants argue that Plaintiff has not proffered sufficient evidence from which a reasonable jury could conclude Mulligan was his "employer" under the FLSA, an argument to which Plaintiff does not respond or provide supporting evidence. (MSJ at 12–13; Reply at 6.) Only "employers" are liable for FLSA violations. 29 U.S.C. § 216(b). The Act defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). Where a corporate officer "exercises control over the nature and structure of the employment relationship, or economic control over the relationship, that individual is an employer within the meaning of the Act and is subject to liability." *Boucher v. Shaw*, 572 F.3d 1087, 1091 (9th Cir. 2009) (internal quotations omitted). The Ninth Circuit applies a four-factor "economic reality" test that considers whether the individual (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records. *Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983), *disapproved of on other grounds*. These factors are not exclusive or "etched in stone," and no one factor is controlling. *Id.* The existence of an employer-employee relationship depends upon the relationship and the circumstances as a whole. *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947).

Mulligan, Soul Surgery's founder and CEO, avers that he does not know Plaintiff, never met or interacted with him during his employment, and was not involved in any decisions regarding Plaintiff's employment, including his work schedule. (DSOF Ex. A, Mulligan Decl. ¶¶ 3–4.) Plaintiff has not produced controverting evidence or made an opposing argument. Accordingly, there is no genuine issue of material fact as to whether Mulligan was Plaintiff's employer under the FLSA, and Mulligan is entitled to summary judgment on Plaintiff's FLSA claims against him.

### C.     Appointment of *Pro Bono* Counsel for Plaintiff

District of Arizona General Order 19-15 allows this Court to appoint *pro bono* counsel to represent an otherwise self-represented litigant in a civil action where such appointment of counsel is appropriate under 28 U.S.C. § 1915. Under that statute, the Court has discretion to appoint counsel in exceptional circumstances for a self-represented civil litigant who is unable to afford counsel. *See* 28 U.S.C. § 1915(e)(1); *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986); *Aldabe v. Aldabe*, 616 F.2d 1089, 1093 (9th Cir. 1980). "A finding of exceptional circumstances requires an evaluation of both 'the likelihood of success on the merits and the ability of the petitioner to articulate his or her claim *pro se* in light of the complexity of the legal issues involved.'" *Wilborn*, 789 F.2d at 1331 (quoting *Weygant v. Look*, 718 F.2d 952, 954 (9th Cir. 1983)); *see also Richards v. Harper*, 864 F.2d 85, 87 (9th Cir. 1988). "Neither of these factors is dispositive and both must be viewed together before reaching a decision on request of counsel" under section 1915(e)(1). *Wilborn*, 789 F.2d at 1331.

The Court will consider whether the appointment of *pro bono* counsel for Plaintiff is appropriate under this standard at the pre-trial conference, but any counsel appointed will be required to take the case as is, without revisiting discovery or motion practice already completed.

### IV.     CONCLUSION

For the reasons stated *supra*, Defendants are entitled to summary judgment on all of Plaintiff's claims against them except Plaintiff's claim against only Defendant Soul Surgery for payment of minimum wage or overtime under the FLSA for the hours he can demonstrate he worked over his lunch breaks. That claim will proceed to trial, along with a determination of Soul Surgery's good faith associated with liquidated damages, should Plaintiff successfully prove uncompensated work hours under the FLSA.

**IT IS THEREFORE ORDERED** granting in part and denying in part Defendants' Motion for Summary Judgment (Doc. 68). Defendants are entitled to summary judgment on all of Plaintiff's claims against them except Plaintiff's claim against only Defendant

Soul Surgery for payment of minimum wage or overtime under the FLSA for the hours he can demonstrate he worked over his lunch breaks.

    **IT IS FURTHER ORDERED** that the Court will set a pre-trial conference by separate Order.

    Dated this 15th day of November, 2024.

                                     Honorable John J. Tuchi
                                     United States District Judge